445 P.2d 776

John H. MORGAN, Jr., Justheim Petroleum Company, and J. H. Morgan, Sr., Plaintiffs and Respondents,

v.

UTAH BOARD OF STATE LANDS, Charles R. Hansen, Cecil Thompson, Donald Schowalter, M. V. Hatch, Harold Reese, Whitney J. Floyd, Phillip Christensen and T. H. Bell, Defendants and Appellants.

No. 11219.

Supreme Court of Utah.

Oct. 10, 1968.

Phil L. Hansen, Atty. Gen., Dallin W. Jensen, Richard L. Dewsnup, Asst. Attys. Gen., Salt Lake City, for appellants.

Frank J. Allen, Brigham E. Roberts, Salt Lake City, for respondents.

TUCKETT, Justice.

The plaintiffs commenced this action to enjoin the defendants from issuing to a third party an oil and gas lease covering lands which were already subject to a lease running in favor of the plaintiffs and covering the oil contained in the bituminous sands found on said lands. We are here concerned chiefly with the issue as to whether or not the oil recoverable under the bituminous sand lease is the same mineral as that recoverable under an oil and gas lease.

Evidence was introduced in the court below as to the nature of the oil which could be taken from bituminous sands in rock formations and the oil which was recoverable in its mobile state from a natural liquid reservoir. The court found that the mineral recovered from either source was the same and enjoined the defendants from issuing an oil and gas lease on the lands in question.

Pursuant to the Mineral Leasing Act of 1959 the State Land Board had adopted the practice of letting state lands under

two separate forms of oil leases. Two types of leases were approved by the Board and were known as "oil and gas" leases and "bituminous sands" leases. The oil and gas lease was designed and intended to permit the lessee to recover the mobile oil which would flow to a bore hole in a liquid state. The bituminous sands lease was intended to permit the lessee to recover the oil from the rock formation itself. The Land Board adopted the practice of issuing two leases on the same lands to different lessees, one permitting the extraction of oil in the usual process of drilling and the flow of oil by natural pressure or by pumping; and the second form of lease permitted the extraction of oil from the rock formation. It would appear that at that time the only practical process of recovering oil from the bituminous sands was by mining and quarrying the rock and thereafter processing the same to recover the oil therefrom. With new developments in the extraction and recovery of oil it became feasible to recover oil from the bituminous sands formations by the application of heat, pressure and by the use of certain types of detergents. These newer methods permitted the extraction of oil from the rock formations without removing the same by mining or similar process. The new processes did in fact extract liquid oil from the formations which were solid in their natural state. It became impossible to distinguish the oil developed and extracted by the two processes. In order to forestall disputes between the lessees as to whether a given quantity of oil came from a bituminous sands formation or from a natural reservoir of oil it was determined that one lease should be issued which would cover all of the oil produced on the lands regardless of its source.

In 1967 the Utah Legislature set about modifying and amending the Utah Mineral Leasing Act and specifically amended Section 65-1-18 by incorporating the following language in the Act:

In furtherance of the principle of multiple use of state lands, the land board may grant a lease for the prospecting, exploration, development and production of any mineral notwithstanding the issuance of other lease or leases on the same land for other minerals, and shall include in such lease suitable stipulations for simultaneous operation. The board shall not issue more than one outstanding lease for the same purpose on the same land.

Other provisions of the amended act permitted the lessee named in one of the two types of oil leases under the former procedure to convert to the single form of lease to be known as "oil, gas and hydrocarbon lease." The amended statute also provided

a procedure by which a conversion of an existing lease might be accomplished.

 We are of the opinion that the Legislature by the statute adopted in 1967 intended and did adopt the policy of allowing but one lease for the extraction of oil from any particular tract of public land.[1] The Legislature may well have made other provisions dealing with the interim period during which existing leases would have expired, nevertheless the Legislature did not see fit to do so. The fact that the state may now be at a disadvantage in dealing with state lands where leasehold interests are now in existence is not a matter for correction by the court but must be left to further determination by the legislative body.

We are of the opinion that the decision of the court below in enjoining the board of state lands from entering into a new lease with third persons for production of oil upon the lands in question is correct and the same is affirmed. No costs awarded.

CROCKETT, C. J., CALLISTER, HENRIOD and ELLETT, JJ., concur.

1. Continental Nat. Bank & Trust Co. of Salt Lake City v. John H. Sealey & Sons Co., et al., 94 Utah 357, 361, 77 P.2d 355,

115 A.L.R. 543; Kirkman v. Bird, 22 Utah 100, 110, 61 P. 338.