481 P.2d 677

UTAH RESOURCES INTERNATIONAL, INC., a Utah corporation, John H. Morgan, Jr., Justheim Petroleum Co., a Nevada corporation, Clarence I. Justheim and J. H. Morgan, Sr., Plaintiffs and Respondents,

v.

UTAH BOARD OF STATE LANDS, Charles R. Hansen, C. S. Thomson, Donald Showalter, M. V. Hatch, Harold Reese, Whitney J. Floyd, Philip V. Christensen, T. H. Bell and W. L. Tueller, Defendants and Appellants.

No. 12131.

Supreme Court of Utah.

Feb. 26, 1971.

Henriod, J., concurred in result; Ellett, J., dissented and filed opinion in which Crockett, J., concurred.

Vernon B. Romney, Atty. Gen., Sheridan L. McGarry, Joseph P. McCarthy, Asst. Attys. Gen., Salt Lake City, for defendants and appellants.

Adam M. Duncan, Salt Lake City, for plaintiffs and respondents.

James R. Brown, Robert G. Pruitt, Jr., of Neslen and Mock, Salt Lake City, for Gas Producing Enterprises Inc., amicus curiae.

TUCKETT, Justice:

The plaintiffs commenced this action in the court below to enjoin the defendants from issuing to a third party an oil shale lease upon lands which are subject to a lease in favor of the plaintiffs covering oil and gas deposits. The lower court granted injunctive relief to the plaintiffs, and from that decision the defendants have appealed.

On October 7, 1963, the plaintiffs obtained a leasehold interest from the defendants granting to the plaintiffs the right to extract oil from asphaltic and bituminous sands. The lease was amended in 1969 granting to the plaintiffs the right to recover other mineral substances including oil and natural gas, but excluding coal and oil shale. On February 16, 1970, the defendant Board approved an application of a third party covering oil shale upon the same lands leased to the plaintiffs. After a trial was had upon the issues, the district court found that the mineral or minerals recoverable from oil shale in the Green River formation underlying the lands is the same mineral recoverable from liquid petroleum in the Green River formation. The court also was of the opinion that the second lease was prohibited by the provisions of Section 65-1-18, U.C.A.1953, as amended.

It is the defendants' contention here that the oil recoverable from oil shale known as Kerogen is not the same as the oil recoverable from asphaltic or bituminous sands and liquid petroleum, and that this factor excludes oil shale from the provisions of Section 65-1-18 above referred to.

In 1967 the legislature amended Section 65–1–18 hereinabove referred to and the provisions of that section were before the court in the case of Morgan v. Utah Board of State Lands[1] in 1968. The historical background leading up to the amendment of the statute is briefly as follows: Prior to 1967 it had been the practices of the State to issue more than one lease upon the same land for the production of oil. For instance, a lease would be issued to one party permitting him to produce oil in the usual manner by the use of drilling bore holes, and another lease would be issued to a second person permitting the extraction of oil from bituminous sands similar to the situation which resulted in the first Morgan case. The practice of granting of dual leases tended to discourage development of oil from State lands. In order to determine the best method of encouraging the production of oil from State lands, the State Land Board in 1965 conducted an extensive hearing to develop a factual basis for recommendations to the legislature. At that hearing various experts who appeared on behalf of oil producers expressed the view that the system of dual leases tended to discourage development of oil upon State lands due to the fact that producers did not wish to risk capital in exploration costs which may be lost if conflicts should arise with other lessees. It should be noted that during the hearing certain of the expert witnesses differentiated Kerogen from other hydrocarbons produced from other sources. Following the hearing, proposed legislation was drafted under the supervision of the Board directed toward the elimination of the dual leasing system. This matter was presented to the legislature during its regular session in 1967. During the session the director of the Land Board appeared as a witness before the committees considering the new legislation. While the record of the hearings before the legislature is not before the court, nevertheless we may assume that the legislature was fully advised as to the facts upon which the proposed amendments were based. The legislature rewrote Section 65–1–18 which now reads as follows:

The state land board may issue mineral leases including without limitation oil, gas and hydro carbon leases for prospecting, exploring, developing, and producing minerals covering any portions of the state lands or the reserved mineral interests in state lands. In furtherance of the principle of mulitple use of state lands, the land board may grant a lease for the prospecting, exploration, development and production of any mineral notwithstanding the issuance of other lease or leases on the same land for other minerals, and shall include in such lease suitable stipulations for simultaneous op-

---

1. 21 Utah 2d 364, 445 P.2d 776.

. eration. The board shall not issue more than one outstanding lease for the same purpose on the same land. * * *

The court was called upon to construe the language of the section as amended in the former Morgan case which was before the court in 1968. The 1969 legislature amended Title 65, Chapter I, by adding Sections 65-1-111 through 114. However, the legislature did not see fit to amend the section we are here concerned with and which was construed by the court in the first Morgan case. It should be noted that the legislature in the 1967 amendment **nor** in the 1969 amendments did not attempt to deal with oil shale or Kerogen derived therefrom as a separate mineral.

We are of the opinion that the district court was correct in its decision construing the statute to prohibit the defendants from entering into a lease of oil shale lands which were already subject to a prior oil, gas and hydrocarbon lease. The judgment of the district court is affirmed. No costs awarded.

CALLISTER, C. J., concurs.

HENRIOD, J., concurs in the result.

ELLETT, Justice (dissenting).

I dissent.

The statute (Sec. 65-1-18, U.C.A.1953 as amended) prohibits the defendants from issuing more than one lease for the *same purpose* on the same land but does permit them to issue a second lease for other minerals.

The lease issued to the plaintiffs specifically excluded coal and oil shale. The plaintiffs therefore cannot develop oil shale but in a "dog in the manger" attitude brought this proceeding to restrain the defendants from issuing a lease to others for the purpose of developing the oil shale on the land.

In the earlier case of Morgan v. Utah Board of State Lands, 21 Utah 2d 364, 445 P.2d 776 (1968), this court determined that oil recoverable from bituminous sand was the same as that pumped from a natural reservoir of oil. It is only necessary to apply heat, pressure or certain detergents through bored holes in the ground to be able to make the oil in bituminous sands flow to the surface of the land.

Such is not the case with oil shale, for oil cannot be made to flow from the shale. It is necessary to mine the shale, and when it is brought to the surface of the ground, there is no oil in it. There is a substance in it called Kerogen from which petroleum hydrocarbons can be derived by the application of heat and subsequent refining. This is shale oil and not petroleum. It is a black waxy oil which freezes at room temperature. See the article by Felix Jaffee in Mineral Industries Bulle-

tin, Vol. 5, No. 2, March, 1962, published by Colorado School of Mines.

The prior Morgan case is of no assistance in deciding this matter.

The Federal Government recognized the difference between oil shale and oil in State of Utah, et al., 71 I.D. 392 (1964). There the Interior Department specifically authorized the disposition of land containing oil shale but reserved the oil and gas to the United States. At pages 403 and 404 it was said:

> It would appear to follow that, if the base land is mineral land and the selected land is both valuable for oil shale and valuable for oil or gas and is situated within the known geologic structure of a producing oil or gas field or included in a producing or producible oil and gas lease, the State may obtain the selected land, including the oil shale deposits upon consenting to a reservation to the United States under the 1914 act of the oil and gas in the selected land. We so conclude.

There can be no conflict between a lessee who mines oil shale and a lessee who produces oil though holes drilled in the ground. Neither one would, by its operation, interfere in any manner with that of the other; and neither one by its operation could possibly take any property from the other to which it would be entitled under its lease.

I, therefore, would reverse the trial court and remand the case with an order to dissolve the injunction and to dismiss the complaint.

CROCKETT, J., concurs in the dissenting opinion of ELLETT, J.