CONTINENTAL NAT. BANK & TRUST CO. OF SALT LAKE CITY v. JOHN H. SEELY & SONS CO. et al.

No. 5890. Decided March 9, 1938. (77 P. [2d] 355.)

*Skeen & Skeen,* of Salt Lake City, for appellants.

*Fabian & Clendenin,* of Salt Lake City, for respondent.

THURMAN, District Judge.

Defendants appeal from an order and judgment of the district court for Emery county, denying their motion for an order recalling an execution issued out of that court and annulling and vacating a levy upon sale of real property thereunder.

On October 10, 1932, in an action brought in the district court for Salt Lake county, plaintiff obtained a judgment against the defendant company. On January 7, 1933, personal property claimed to belong to the defendant company was sold under execution issued out of that court. Upon the return of the sale by the sheriff, a satisfaction of the judgment was duly entered. Thereafter, on October 16, 1933, a judgment of the district court for Sanpete county was entered decreeing the sale to be void. On November 10, 1933, upon application of plaintiff, the district court for Salt Lake county made and entered an order reviving its original judgment of October 10, 1932. On November 24, 1933, a transcript of the original judgment was filed and docketed in the office of the clerk of the district court for Emery county. On July 10, 1935, an execution upon the judgment so docketed was issued out of the district court for Emery county, and real property of the defendant company was duly levied upon and sold. In proper time defendants moved the district court for Emery county to recall the execution and to vacate and set aside the sale thereunder. It is from the court's order and judgment denying their motion that defendants bring this appeal. The defendant trustee was made a party to the action subsequent to February 23, 1936, on which date involuntary bankruptcy proceedings were instituted against the defendant company. There is nothing in the record to indicate that a transcript of the revival order of the district court for Salt Lake county, or any notice

of such order, was ever docketed or filed in the office of the clerk of the district court for Emery county, and neither counsel claims the contrary. It is also conceded that no rights of third parties with respect to the land levied upon and sold accrued or intervened between the entering of the original judgment and the time of the sale. Ownership of the original judgment debt remained in the plaintiff throughout all the proceedings.

Defendants' motion to recall the execution and vacate the sale thereunder was made upon the single proposition that the Salt Lake county judgment, a transcript of which was docketed in Emery county, had theretofore been fully satisfied and discharged in the office of the clerk of the district court for Salt Lake county and, as a result, there was no valid and subsisting transcript of judgment filed and docketed in the office of the clerk of the district court for Emery county upon which an execution could legally be issued. They present two assignments of error to this court, both of which raise the same legal proposition. A separate consideration of each will be unnecessary, as a determination of either will be determinative of the other and of this appeal.

Defendants contend in effect that a judgment made and entered in the district court for one county and docketed in the office of the clerk of the district court for another county cannot support an execution out of the latter court where the original judgment has been satisfied of record in the office of the clerk of the court where originally entered, notwithstanding that subsequent to the entry of the satisfaction and prior to the execution an order reviving the original judgment had been made and entered under the provisions of title 104, c. 37, § 38, R. S. Utah 1933. In support of such position it is argued that "the satisfaction of the original judgment extinguished it entirely and forever." Plaintiff, on the other hand, takes the position that a revival order made pursuant to that statute does just as the words imply; that is, it reinstates the original judgment in full

force and effect and that the original judgment is the proper judgment upon which to issue execution when so revived and that it is not proper to issue execution upon the revival order alone.

The question thus presented is one of first impression in this court and requires a construction of title 104, c. 37, § 38, R. S. 1933, which reads as follows:

"If the purchaser of real property sold on execution, or his successor in interest, is evicted therefrom in consequence of irregularities in the proceedings concerning the sale, or by the reversal or discharge of the judgment, he may recover the price paid, with interest, from the judgment creditor. If the purchaser of property at an officer's sale, or his successor in interest, fails to recover possession in consequence of irregularity in the proceedings concerning the sale, or because the property sold was not subject to execution and sale, the court having jurisdiction thereof must, after notice, and on motion of such party in interest or his attorney, revive the original judgment in the name of the petitioner for the amount paid by such purchaser at the sale, with interest thereon from the time of payment at the same rate that the original judgment bore; and the judgment so revived has the same force and effect as would an original judgment of the date of the revival, and no more."

The language employed, when considered in its entirety and given its fair import, is neither involved nor ambiguous, and the ideas expressed thereby are definite and certain. The gist of the section, so far as is material to the question under consideration, is found in the words, "the court * * * must * * * revive the original judgment." To contend that this can mean other than that the original judgment is to be rendered operative and effective is to trifle with words and human understanding. Nor does the language of the last clause of the section detract from its clear meaning. It simply provides that the judgment so revived becomes of force and effect as of the date of revival and no more. There is not anything there nor elsewhere in the entire section expressly stating or justifying the inference that the original judgment is to be abandoned and allowed to remain inoperative or that the original judgment

when revived is to be a new and different judgment. The clear and unequivocal purport of the language of the last clause affects only the operative or effective date of the original judgment; that is, changes it from the time of entry of the original judgment to the time of the entry of the order directing its revival. The obvious intent and purpose of that clause is to safeguard intervening rights. There are no such rights in the matter before us. It is true, however, that the judgment as docketed in the office of the clerk of the district court for Emery county, upon which the execution was issued that resulted in the sale of the defendant company's land, showed it to be an effective judgment in Salt Lake county as of the date of its original entry; whereas, under the provisions of the last clause of the statute in question, its effective date was the date of the entry of the revival order. As a matter of mere form the transcript of the original judgment docketed in the office of the clerk of the district court for Emery county might have shown with propriety the satisfaction and the subsequent order of revival. Had it done so, however, the ultimate result would have been the same. Title 104, c. 30, § 15, R. S. 1933, provides:

"A transcript of judgment rendered in a district court of this state, in any county thereof, may be filed and docketed in the office of the clerk of the district court of any other county, and when so filed and docketed it shall have, for purposes of lien and enforcement, the same force and effect as a judgment entered in the district court in such county."

Under this statute the judgment becomes of force and effect, for purposes of lien and enforcement, in the county where the transcript is filed only as of the time of the filing and not before. As the original judgment in the instant case had been revived in its original form prior to the time of the filing of the transcript thereof in Emery county, of what avail would it be to have shown in the transcript that at some prior time there had been a satisfaction and revivor in Salt Lake county; that is, that some time prior, through

inadvertence, mistake, or otherwise, a satisfaction of the judgment had been entered on the record, but that subsequently the record had been corrected and the judgment reinstated and given its original force and effect? None is apparent to us. Had the order of revival modified or changed the original judgment as provided in the statute, showing the purchaser at the sale on execution or his successor in interest to be different than the original judgment creditor, or by showing a partial satisfaction, it would then have been proper to indicate such changes in the transcript of the original judgment filed and docketed in Emery county. Also, it may be added as a procedural matter, had the filing and docketing of the transcript of the original judgment in Emery county preceded in time the entry of the satisfaction and revival order, a transcript of the revival order should have been filed and docketed in the office of the clerk of the district court for Emery county as a supplement to the original transcript for the purpose of showing the change in the effective date of the original judgment in both counties and any other changes appearing in the revival order.

Statutes of a similar purport have been enacted by many states of this country. Their intent and purpose are to give in part the relief obtainable under the ancient writ of scire facias which seems to have been incorporated into the common law of England by the statute of 13 Edw. I, chap. 45. The original purpose of that statute was to remedy the inconvenience and burden of collecting a judgment when the time within which execution might have been issued had passed. In such a case, under the early common law and prior to the statute just referred to, it was necessary to sue on the judgment in a new action, affording the defendant an opportunity of proving that he had discharged it, if he had really done so. *Greer* v. *State Bank*, 10 Ark. 455; *Allen* v. *Patterson*, 69 Colo. 302, 194 P. 934; 24 R. C. L. 666, § 1. It is generally considered that the procedural remedy of scire facias was included in the com-

mon law of England as adopted by the several states of this country. 24 R. C. L. 666, § 1. Its original use, however, was extended in England prior to the adoption of the common law in this country and since by those states where it has been and now is employed. It is and has been used where a judgment or decree, upon which the prevailing party was originally entitled to execution, may appear to be satisfied when no satisfaction has in fact taken place as where the entry of satisfaction has been procured by fraud or is due to mistake, or where the satisfaction appears to have resulted from the sale of property to which the defendant had no title and the sale has not paid the judgment or has but partially paid it. In these and other cases where, from an examination of the record, the plaintiff's right to execution seems to be extinguished, but where in fact it is not, he could by scire facias under the common law, and can generally in those jurisdictions where the writ is still employed, bring the defendant before the court and upon a proper showing have the entry upon the record vacated or made to conform to the facts and obtain execution on the original judgment. 24 R. C. L. 670, § 8. When so employed, though it be attended with some qualities of an original action, it is but a mode of obtaining execution in an action already terminated in a judgment. Thus, it is generally held that a scire facias to revive a judgment is not an original process, but is merely a continuation of an action, a step in the enforcement of the original judgment. It is dependent on the liability previously established by the judgment which it is used to revive, and creates nothing new but preserves what already exists and would be lost without it. Freeman on Judgments, 5th Ed., vol. 2, §§ 1012 and 1091; *Bankers' Life Ins. Co.* v. *Robbins,* 59 Neb. 170, 80 N. W. 484; *Marx* v. *Sanders,* 98 Ala. 500, 11 So. 764; *Grover* v. *Boon,* 124 Pa. 399, 16 A. 885; *Waldstein* v. *Williams,* 101 Ark. 404, 142 S. W. 834, 37 Am. St. Rep. 1162; *Eastin* v. *Vandorn,* Walk., Miss., 214; *Evans* v. *City of American Falls,* 52 Idaho 7, 11 P. 2d 363; 24 R. C. L. 667, § 2. We are

not unmindful of the cases holding that the writ of scire facias under other circumstances is an original writ to obtain a judgment where none has before existed, and as such is clearly a new action. The writ when so considered, however, is used under entirely different circumstances and for quite a different purpose than under the facts presented in this case. *Slayton* v. *Smilie,* 66 Vt. 197, 28 A. 871, 872; 24 R. C. L. 666, § 2; *Bank of Eau Claire* v. *Reed,* 232 Ill. 238, 83 N. E. 820, and note 122 Am. St. Rep. 69; *McDowell* v. *Asbury,* 66 N. C. 444. Counsel for appellants quote in their brief at length from the Slayton Case and seem to rely most strongly upon it to support their position. A most cursory reading of the opinion reveals that the Vermont court recognized the common-law rule, with respect to scire facias to revive a judgment, to be as we have above indicated, but goes on to add that by express statutory enactment in that state the character of the judgment to be rendered on a scire facias proceeding to revive a judgment had been changed. The following excerpt from the portion of that opinion quoted in counsel's brief is sufficient to show the distinction between that case and the matter before us:

"This [the Vermont statute] changed the character of the judgment to be rendered on scire facias proceedings of this kind. It reads: 'In actions of scire facias commenced to revive or enforce the execution of a judgment, the court shall, unless cause is shown to the contrary, render judgment in favor of the plaintiff for the amount of the original judgment with interest and costs on the scire facias.' By this act the court is required to render a new judgment for damages and costs, and the execution is for the enforcement of the new judgment. The new judgment is not, as in scire facias at common law, that the plaintiff may have execution on the original judgment, but that he is to have and recover a different amount of damages, an amount ascertained by adding the costs to the damages in the original suit, and deducting therefrom what has been paid or satisfied, if anything, and computing interest on the sum thus found from the rendition of the original judgment. This was so done in the scire facias suit under consideration."

The foregoing quoted portion of the Vermont statute, R. L. § 1433, reading, "the court shall * * * render judg-

ment in favor of the plaintiff for the original judgment with interest and costs on the scire facias," when read in comparison with the language of the statute of this state under consideration and in particular the portion hereinbefore referred to, reading, "the court * * * must * * * revive the original judgment," indicates the distinction to which we refer.

In this state, as in most of the states which have adopted reformed codes of civil procedure, the objects sought by scire facias may generally be accomplished by some other remedy. Indeed, the writ has by express legislation or by implication been abolished in some of the states. *Humiston* v. *Smith*, 21 Cal. 129; *Hughes* v. *Shreve*, 60 Ky. 547, 3 Metc. 547; *Haupt* v. *Burton*, 21 Mont. 572, 575, 55 P. 110, 69 Am. St. Rep. 698; *DeBaca* v. *Wilcox*, 11 N. M. 346, 68 P. 922; *McDowell* v. *Asbury*, supra; *State ex rel. Wilson* v. *Shively*, 10 Or. 267. This state has not by express legislation abolished it. Whether it has done so by implication is not material to a determination of the question before us. It is sufficient that the manifest intent and purpose of the statute in question is to afford the relief provided for by the common-law writ of scire facias pertaining to the revival of judgments. This being so, it follows from the generally adopted rules of statutory construction, that the statute in question, if susceptible of two or more meanings, must be read and construed in the light of the common law in force at the time of its enactment. 25 R. C. L. 1053. When so construed, we are inevitably led to the same conclusion as we reach upon a consideration of the language of the statute independent of the rules of construction, namely, that the statute contemplates and provides that the original judgment shall be revived; that when it is so revived it is the judgment upon which execution should issue, whether out of the court where the judgment is originally entered or out of the court of a different county where a transcript of the judgment has been filed and docketed.

Many of the authorities cited by counsel on both sides hold, or seem to hold, that the remedy provided for by identical or similar statutes is cumulative to other remedies having a similar objective, whether common law or otherwise. Such holdings are supported by generally recognized rules of statutory construction and with them, generally speaking, we have no quarrel. However, whether the remedy provided for by the statute under consideration is cumulative is not before us or determinative of the matter here involved.

For the reasons above stated the order of the district court for Emery county denying appellants' motion is affirmed. Costs to respondent.

FOLLAND, C. J., and EPHRAIM HANSON, WOLFE, and LARSON, JJ., concur.

MOFFAT, J., being disqualified, did not participate herein.