SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| FIDELITY NATIONAL FINANCIAL INC., | ) | Arizona Supreme Court |
| | ) | No. CV-10-0096-CQ |
| | ) | |
| Plaintiff/Appellee, | ) | United States Court of |
| | ) | Appeals, 9th Circuit |
| | ) | No. 08-16967 |
| | ) | |
| FIDELITY EXPRESS NETWORK INC., | ) | United States District |
| | ) | Court |
| Claimant/Appellee, | ) | No. 2:03-cv-01222-RCB |
| | ) | |
| v. | ) | |
| | ) | |
| COLIN H. FRIEDMAN; et al, | ) | **O P I N I O N** |
| | ) | |
| Defendants/Appellants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ANITA MESHKATAI, individually | ) | |
| and as a trustee of the Anita | ) | |
| Kramer Living Trust, dated July | ) | |
| 23, 1987, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

Certified Questions from the
United States Court of Appeals for the Ninth Circuit

The Honorable Sidney R. Thomas, Judge

The Honorable Betty B. Fletcher, Judge

The Honorable N. Randy Smith, Judge

**QUESTIONS ANSWERED**
_____

HENNELLY & GROSSFELD LLP                    Marina Del Rey, CA

        By    Orlando F. Cabanday
              Janice M. Kroll
              Thomas H. Case

And

SHERMAN & HOWARD L.L.C.                              Phoenix
        By    Dewain D. Fox
Attorneys for Fidelity National Financial Inc. and Fidelity
Express Network Inc.

SCHIAN WALKER, P.L.C.                                Phoenix
        By    Michael R. Walker
              Mark C. Hudson
Attorneys for Colin H. Friedman
_____

**H U R W I T Z**, Vice Chief Justice

**¶1**      We accepted jurisdiction to answer two questions
certified to us by the United States Court of Appeals for the
Ninth Circuit:

> 1) Do collection activities (such as filing for a
> writ of garnishment or applying for orders from
> the court to inspect a safety deposit box or
> require a debtor's exam) taken within Arizona,
> renew a judgment previously registered in Arizona?
>
> 2) Does the filing of a related lawsuit in a state
> other than Arizona renew a judgment previously
> registered in Arizona?

**¶2**      We have jurisdiction pursuant to Article 6, Section
5(6) of the Arizona Constitution, Arizona Revised Statutes
("A.R.S.") §§ 12-1861 to 12-1867 (2003), and Arizona Supreme
Court Rule 27.

¶3     The facts and procedural history of this litigation are set forth in detail in the certification order of the Ninth Circuit, *Fidelity Nat'l Fin. Inc. v. Friedman*, 602 F.3d 1121, 1122-23 (9th Cir. 2010), and are summarized here.

¶4     In 2002, Fidelity National Financial Inc. ("Fidelity") obtained a monetary judgment against Colin and Hedy Friedman and Farid and Anita Meshkatai (collectively the "Debtors") in the United States District Court for the Central District of California.  Fidelity registered the judgment in the United States District Court for the District of Arizona in November 2002.  During the next five years, Fidelity obtained court orders in Arizona authorizing writs of garnishment, inspection of the Debtors' safety deposit box, and debtors' examinations (collectively, the "Arizona collection activities").  In 2006, Fidelity filed a new action in the Central District of California (the "California racketeering suit"), alleging that the Debtors had violated federal racketeering laws and California state fraud laws by using family trusts and other devices to avoid paying the 2002 judgment.

¶5     In 2008, the Debtors filed a motion in the Arizona federal court contending that Fidelity could not enforce the 2002 judgment because more than five years had  passed since its entry.  The district court denied the motion, concluding that

the 2002 judgment had been renewed pursuant to A.R.S. § 12-1551(B) (Supp. 2009) and § 12-1611 (2003)[1] by the Arizona collection activities and California racketeering suit. Fidelity appealed, and the Ninth Circuit certified the two questions to us.[2]

## II.

¶6    The starting point in resolving the questions before us is the common law background to Arizona's statutory scheme for renewal of judgments.  At common law, judgments generally became dormant if not executed upon within a year of entry and were unenforceable after twenty years.  *See Browne & Manzanares Co. v. Chavez*, 54 P. 234, 234 (N.M. Terr. 1898).  A judgment creditor could avoid this problem in two ways.  The first was by suing on the judgment in a new action and obtaining a new judgment, which then could be executed upon.  *See Cont'l Nat'l Bank & Trust Co. of Salt Lake City v. John Seely & Sons Co.*, 77 P.2d 355, 358 (Utah 1938); *Simpson v. Cochran & Cherrie*, 23 Iowa 81, 81 (1867).  The second was through a writ of scire facias, which revived the original judgment and thus allowed execution

---

[1]    Absent material change since the events in question, we cite the current versions of statutes.

[2]    The Ninth Circuit was "uncertain" about these issues in light of a depublished opinion of our court of appeals and a memorandum decision of that court.  *Fidelity Nat'l. Fin. Inc.*, 602 F.3d at 1123.  Under Arizona law, however, neither decision has precedential value.  Ariz. R. Civ. App. P. 28(c), (f); Ariz. R. Sup. Ct. 111(c).

on it.  *See Cont'l Nat'l Bank & Trust Co. of Salt Lake City*, 77 P.2d at 358; *Am. Ry. Express Co. v. F.S. Royster Guano Co.*, 126 S.E. 678, 679 (Va. 1925) ("The proceeding by scire facias is not a new suit . . . but a continuation of the old suit.").

¶7    Since well before statehood, Arizona statutes have provided both a deadline for enforcing judgments and a procedure for extending that deadline.  The 1901 Territorial Code provided:

> No execution shall be issued upon any judgment after the expiration of five years from the date of its rendition and entry, unless such judgment be revived by scire facias, or an action of debt be brought thereon within five years from the date of such rendition and entry.

1901 Territorial Code § 2558.  Section 2959 of the 1901 Territorial Code codified the common law by allowing revival of a judgment "by scire facias or an action of debt brought thereon within five years after the date of such judgment."[3]

¶8    The first Civil Code enacted after statehood, the 1913 Civil Code, made a significant change to the statutes governing judgment revival.  That Code eliminated scire facias, replacing the common law writ with a simplified process under which a judgment was "revived by affidavit."  1913 Civ. Code § 1353.

---

[3]    The common law action of debt was a form of action to recover a sum certain.  26 C.J.S. Debt, Action of § 1 (2001). An action on a judgment sought recovery of a sum certain – the amount owed on the original judgment and accrued interest.  *See Brandt v. Meade*, 17 Ariz. 34, 35-36, 148 P.2d 297, 298 (1915).

5

The affidavit process was spelled out in detail in the 1913 Code. 1913 Civ. Code §§ 581 to 583. The affidavit could be filed "at any time within the ninety days next preceding the expiration of the five year period within which a judgment may be a lien under existing law." 1913 Civil Code § 582. The affidavit, filed in the court that rendered the original judgment, "operate[d] to renew and revive said judgment to the extent of the balance shown due in said affidavit for the period of five years from the date of the filing of such affidavit." *Id.* Thus, like the writ of scire facias, the affidavit continued the effectiveness of the original judgment so that the judgment creditor could continue to execute upon it. *See Owens v. McCloskey*, 161 U.S. 642, 645 (1896) (describing writ as "continu[ing] the effect of . . . the former judgment").

¶9     Although it abandoned the common law writ of scire facias, the 1913 Civil Code expressly preserved the common law alternative of suing on the judgment. Thus, § 1353 provided that a judgment could also be renewed by an "action . . . brought thereon." Section 580 similarly provided for renewal of a judgment "by action brought thereon in any court of competent jurisdiction within this state at any time within five years after the date of such judgment."

6

¶10     These provisions from the 1913 Civil Code have been carried forward without material change into present law. Section 12-1551(B) now provides as follows:

> An execution or other process shall not be issued upon a judgment after the expiration of five years from the date of its entry unless the judgment is renewed by affidavit . . . or an action is brought on it within five years from the date of the entry of the judgment or of its renewal.

The affidavit renewal process is set forth in § 12-1612 (2003). Like its predecessors, § 12-1551(B) preserves the option of renewal through "an action . . . on" the original judgment. Section 12-1611, in turn, states that "[a] judgment may be renewed by action thereon at any time within five years after the date of the judgment."

**III.**

¶11     The question before us is whether any of the Arizona collection efforts or the California racketeering suit renewed the 2002 judgment. Our inquiry therefore focuses on § 12-1551(A), which provides that a judgment is renewed by "an action brought on it," and § 12-1611, which refers to renewal by "action thereon."

¶12     We start from the premise that the slight difference in the language of these two sections is of no consequence. Read together, the two statutes — as did their forebears — enact a limitations period for the enforcement of a judgment and

7

provide for extension of that period by an action "on" the judgment. *See Pima County by City of Tucson v. Maya Constr. Co.,* 158 Ariz. 151, 155, 761 P.2d 1055, 1059 (1988) ("[I]f statutes relate to the same subject and are thus *in pari materia,* they should be construed together . . . as though they constituted one law."). The "action thereon" described in § 12-1611 is plainly the same "action brought on" the judgment to which § 12-1551 refers.

¶13 Our post-statehood case law confirms that every judgment continues to give rise to an "action to enforce it, called an action upon a judgment." *Associated Aviation Underwriters v. Wood*, 209 Ariz. 137, 180 ¶ 150, 98 P.3d 572, 615 (App. 2004) (citation and internal quotation marks omitted). "The main purpose of an action on a judgment is to obtain a new judgment which will facilitate the ultimate goal of securing the satisfaction of the original cause of action." *Id*. (citations and internal quotation marks omitted).

¶14 As was true at common law, the defendant in an action on the judgment under our statutory scheme is generally the judgment debtor, *id*., and the amount sought is the outstanding liability on the original judgment, *Brandt v. Meade*, 17 Ariz. 34, 35-36, 148 P.2d 297, 298 (1915). The judgment debtor cannot deny the binding force of the judgment, *Miller Rubber Co. of N.Y. v. Peggs*, 60 Ariz. 157, 159, 132 P.2d 439, 440 (1942), but

8

can assert such defenses as satisfaction or partial payment, *Brandt*, 17 Ariz. at 41, 148 P. at 301. If indebtedness remains on the original judgment, the action results in a new judgment in the amount owed. *Associated Aviation Underwriters*, 209 Ariz. at 180 ¶ 150, 98 P.3d at 615.

¶15        "Legislative intent often can be discovered by examining the development of a particular statute." *Carrow Co. v. Lusby*, 167 Ariz. 18, 20, 804 P.2d 747, 749 (1990). The history of §§ 12-1551 and 12-1611, dating from before statehood, is particularly instructive. It demonstrates that our current statutes, in referring to an action "brought" on a judgment or an "action thereon," were meant by the legislature to describe the common law action on a judgment.

**IV.**

**A.**

¶16        In arguing that the Arizona collection efforts and the California racketeering suit were actions on the judgment, Fidelity relies primarily on a general definitional statute, which provides that:

> In the statutes and laws of this state, unless the context otherwise requires:
>
> 1. "Action" includes any matter or proceeding in a court, civil or criminal.

A.R.S. § 1-215 (Supp. 2010). Fidelity contends that any "matter or proceeding" seeking to facilitate collection on a judgment or

9

indicating the judgment creditor's continued intent to enforce the judgment is an action on the judgment.

¶17 The argument is not persuasive. The definition of "action" currently in § 1-215(1) did not appear in Arizona statutes until 1928. *See* 1928 Code § 3040(4). Because §§ 12-1551 and 12-1611 descended directly from the 1901 Territorial Code and the 1913 Civil Code, a general definitional statute enacted after 1913 is of little use in interpreting the current statute's use of the word "action."

¶18 More importantly, § 1-215 makes plain that its general definition of "action" applies "unless the context otherwise requires." Sections 12-1551 and 12-1611 refer not merely to an "action," but to an action "brought" on a "judgment" or an action "thereon." These statutes, like their predecessors, thus describe not simply an action in some way related to the earlier judgment, but rather a specific form of suit — the common law action *on* a judgment.

**B.**

¶19 Our construction of §§ 12-1551 and 12-1611 is consistent not only with the history of these statutes, but also with their central purpose. The renewal statutes are designed to notify interested parties of "the existence and continued viability of the judgment." *In re Smith*, 209 Ariz. 343, 345 ¶ 10, 101 P.3d 637, 639 (2004). Among the parties most

interested in the status of the judgment are those considering extending credit to the judgment debtor.

¶20     If, as Fidelity argues, a judgment could be renewed by "any matter or proceeding in a court, civil or criminal," § 1-215(1), a prospective creditor would face an onerous task in determining the judgment's continued effect.  Under Fidelity's view, the potential lender would be required to search the records of at least every court in the state – and perhaps the nation — to determine whether a writ of garnishment or other proceeding relating to the judgment had been instituted.  *See Ellsworth Land & Livestock Co. v. Bush*, ___ Ariz. ___, ___ ¶ 11, 233 P.3d 655, ___ (App. 2010) ("'[A] debt may be garnished wherever personal jurisdiction may be exercised over the garnishee.'" (quoting Restatement (Second) Conflict of Laws § 68 (1971))).  Such a reading of §§ 12-1551 and 12-1611 would hardly afford interested parties effective notice of the status of the original judgment.

¶21     Under § 12-1612, a potential creditor need only search the docket of the court in which the original judgment was entered for the ninety days preceding the five-year expiration date to determine whether a judgment has been renewed by affidavit.  It would make little sense for the legislature to have provided strict temporal and filing limitations on the affidavit process, while at the same time allowing any action

11

relating to the judgment, filed anywhere, to renew it. If, however, §§ 12-1551 and 12-1611 authorize renewal by action only through a common law action on the judgment, no great burden is placed on potential creditors, because a successful action on a judgment results in the entry of a new judgment. Those considering extending credit already must check for extant judgments in the relevant jurisdiction.

## C.

¶22    Finally, Fidelity argues that the Debtors may unjustly escape liability if the certified questions are answered in the negative. Our legislature, however, long ago determined that the judgment debtor will be released from further obligation unless a judgment creditor timely files a renewal affidavit or brings an action on the judgment within five years after its entry. Inherent in any statute of limitations is the risk that a party who owes money may escape liability if the creditor does not act in a timely fashion.

¶23    To mitigate any possible unfairness, the legislature has provided a simple mechanism for renewing the judgment. The judgment creditor need only file an affidavit, in a form specified by statute, within a ninety day period before the judgment expires to obtain renewal and maintain the priority of

the original judgment.[4]  The statute also preserves the more cumbersome common law action on the judgment.  When a judgment creditor fails to utilize either of these statutory alternatives, its resultant inability to enforce the original judgment in Arizona is compelled by law.

**V.**

¶24    For the reasons above, we conclude that the "action . . . on" a judgment referred to in § 12-1551 and the "action thereon" referred to in § 12-1611 are the common law action on a judgment, which replaced the original judgment with a new judgment in the amount then owed.[5]  We turn now to the certified questions.

¶25    The first certified question asks whether "collection activities . . . taken within Arizona" serve to renew a judgment.  None of the Arizona collection efforts undertaken by Fidelity was a common law action on the 2002 judgment.  Rather,

---

[4]    Fidelity apparently filed an affidavit to renew the Arizona judgment, but Debtors claim that it was ineffective because it was filed more than ninety days before the expiration of that judgment.  *See* A.R.S. § 12-1612(B).  This issue has not been certified to us, and we express no opinion on it.

[5]    We disapprove any dictum to the contrary in *Hall v. World Savings & Loan Ass'n*, 189 Ariz. 495, 502-03, 943 P.2d 855, 862-63 (App. 1997).  And, although we agree with the conclusion in *Associated Aviation Underwriters* that §§ 12-1551 and 12-1611 refer to the common law action on a judgment, 209 Ariz. at 180 ¶ 150, 98 P.3d at 615, we express no opinion whether, in light of today's opinion, the court of appeals correctly concluded that the complaint-in-intervention in that case was such an action.

13

the writs of garnishment sought to satisfy the judgment by seizing the Debtors' property; the other collection efforts sought to discover assets of the Debtors. The Arizona collection efforts were attempts to collect upon the 2002 judgment, not to renew it. *See In re Smith*, 209 Ariz. at 345 ¶ 13, 101 P.3d at 639 (recognizing the difference between enforcing and renewing a judgment). We therefore answer the first certified question in the negative.

¶26 The second certified question inquires whether the filing of a "related lawsuit in a State other than Arizona" can renew an Arizona judgment. Here, the only lawsuit meeting that description is the California racketeering suit. That suit clearly was not a common law action on the judgment; it did not simply recite the amount owed and seek a judgment on that debt. Instead, the California racketeering suit sought remedies under federal and California law because of actions allegedly undertaken by the Debtors to frustrate collection of the 2002 judgment. Indeed, because the California racketeering suit resulted in a defense verdict in 2010, it did not culminate in a new judgment against the Debtors. We therefore answer the second certified question in the negative.[6]

---

[6] We express no opinion whether the 2002 judgment remains enforceable in the Central District of California or elsewhere.

14

_____
Andrew D. Hurwitz, Vice Chief Justice

CONCURRING:


_____
Rebecca White Berch, Chief Justice


_____
W. Scott Bales, Justice


_____
A. John Pelander, Justice


_____
Michael D. Ryan, Justice (Retired)

15