IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

SPECIALTY COMPANIES GROUP, LLC, ET AL.,
*Plaintiffs/Appellants*,

*v.*

MERITAGE HOMES OF ARIZONA, INC.,
*Defendant/Appellee.*

No. CV-20-0086-PR
Filed August 5, 2021

Appeal from the Superior Court in Maricopa County
No. CV2015-090161
The Honorable David M. Talamante, Judge (Retired)
**AFFIRMED**

Opinion of the Court of Appeals, Division One
248 Ariz. 434 (App. 2020)
**REVERSED**

COUNSEL:

David D. Williams (argued), Davis Miles McGuire Gardner, PLLC, Tempe,
Attorney for Specialty Companies Group, LLC, et al.

James E. Holland Jr. (argued), Jennifer L. Allen, Michael Vincent, Stinson
LLP, Phoenix, Attorneys for Meritage Homes of Arizona, Inc.

JUSTICE BOLICK authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES LOPEZ, BEENE, and MONTGOMERY joined.[*]

_____

JUSTICE BOLICK, Opinion of the Court:

**¶1**        In this case, we agree with the court of appeals that, because alter ego claims are derivative in nature, "a party seeking to pierce the corporate veil under an alter-ego theory is bound by the limitation period applicable to the cause of action to which the alter-ego claim is tied." *Specialty Cos. Grp. LLC v. Meritage Homes of Ariz. Inc.*, 248 Ariz. 434, 439–40 ¶ 12 (App. 2020) (collecting cases holding same).  As applied to the controversy before us, we hold that Specialty Companies Group's alter ego claim is bound by the statute of limitations for breach of contract and is time-barred.  The court of appeals' ruling to the contrary is reversed.

### BACKGROUND

**¶2**        In 2004, Meritage Homes of Arizona and Hacienda Builders, Inc., formed Maricopa Lakes, LLC, to develop a residential real estate project in Arizona.  Maricopa Lakes, in turn, hired G&K South Forty Development to serve as project manager.  And in August 2007, G&K hired Specialty Companies Group, LLC, to provide grouted riprap[1] for the development.

**¶3**        The year 2007 rings an ominous bell for observers of the American real estate market, so it will come as no surprise that late that year, Hacienda Builders announced it would no longer meet its financial

_____

[*] Although Justice Andrew W. Gould (Ret.) participated in the oral argument in this case, he retired before issuance of this Opinion and did not take part in its drafting.

[1] "Grouted riprap" refers to rocks cemented into place along inclines, typically shorelines or spillways, to prevent erosion.

obligations[2] to Maricopa Lakes. This notice kicked off a flurry of litigation that has lasted for nearly a decade and a half.

¶4 On April 13, 2009, Specialty sued G&K to collect more than $150,000 in unpaid invoices. G&K then filed a third-party complaint against Maricopa Lakes seeking indemnification, but because Maricopa Lakes had already been dissolved by the Arizona Corporation Commission, G&K was awarded a default judgment ("the Lakes Judgment") in the amount of $234,943.44 in November 2011. G&K then assigned to Specialty all of G&K's claims against Maricopa Lakes, including the right to enforce and collect on the Lakes Judgment.

¶5 On January 22, 2015, Specialty sued Meritage and Hacienda — but not Maricopa Lakes — under an alter ego theory. The trial court granted summary judgment to Meritage, ruling that Specialty's claims were time-barred under the six-year limitation period for claims evidenced by or founded on a written contract. A.R.S. § 12-548(A)(1).

¶6 Specialty voluntarily dismissed its claims against Hacienda and appealed the trial court's judgment. The court of appeals reversed, holding that the alter ego claim was in fact an action on a judgment, governed by a five-year[3] statute of limitations that only began to run when the judgment was final. A.R.S. § 12-1551(A) (2013).

¶7 We granted Meritage's petition for review because it raises recurring issues of statewide importance, and we have jurisdiction under article 6, section 5, clause 3 of the Arizona Constitution.

## ANALYSIS

¶8 We review de novo the rulings on Meritage's motion for summary judgment, *Normandin v. Encanto Adventures*, *LLC*, 246 Ariz. 458, 460 ¶ 9 (2019), as well as the trial court's choice and application of a statute

---

[2] Meritage and Hacienda were obligated to purchase any properties that were not successfully sold to homebuilders, in proportion to their equity interests.

[3] Section 12-1551 has since been amended to a ten-year statute of limitations.

of limitations. *Broadband Dynamics, LLC v. SatCom Mktg., Inc.*, 244 Ariz. 282, 285 ¶ 5 (App. 2018).

**¶9** Generally, a parent corporation is insulated from a subsidiary corporation's liability thanks to the "veil" of the corporate form. *See Keg Rests. Ariz., Inc. v. Jones*, 240 Ariz. 64, 73 ¶ 31 (App. 2016). But under Arizona law, the corporate veil can only be pierced, and a parent company held liable for the acts of its subsidiary, if (1) there is unity of control between parent and subsidiary such that one is the "alter ego" of the other, and (2) observing the corporate form's privileges and protections would be unjust. *See Gatecliff v. Great Republic Life Ins. Co.*, 170 Ariz. 34, 37 (1991). Such an attempt to pierce the corporate veil is not itself a cause of action but is raised in the context of another cause of action such as ones based on contract or tort. *See* 1 Fletcher Cyc. Corp. § 41.10.

**¶10** Specialty seeks to hold Meritage liable for a breach of contract committed by Maricopa Lakes, its subsidiary and putative alter ego. But we are not asked to decide if Maricopa Lakes is in fact Meritage's alter ego — we need only decide whether Specialty's claim to pierce the corporate veil was brought timely.

**¶11** Whether Specialty's alter ego claim was timely depends on the relevant statute of limitations. Because alter ego claims are derivative of another cause of action, we agree with the court of appeals that "a party seeking to pierce the corporate veil under an alter-ego theory is bound by the limitation period applicable to the cause of action to which the alter-ego claim is tied." *Specialty Cos. Grp. LLC*, 248 Ariz. at 439–40 ¶ 12; *accord Peetoom v. Swanson*, 778 N.E.2d 291, 295 (Ill. App. Ct. 2002); *Turner Murphy Co. v. Specialty Constructors, Inc.*, 659 So.2d 1242, 1245–46 (Fla. Dist. Ct. App. 1995). For example, if a plaintiff sues a subsidiary company for negligence and then seeks to pierce the corporate veil and hold the parent company liable, the suit is not subject to a distinct "alter ego statute of limitations," but is bound by the statute of limitations for negligence, the cause of action from which the alter ego claim derives.

**¶12** The court of appeals held that "Specialty's action — including the alter-ego interwoven within it — was an action on a judgment, [and] it is subject to the then-five-year limitation period for an action on a judgment." We disagree and take this opportunity to clarify our jurisprudence about "actions on a judgment."

**¶13**    We recounted the history of actions on a judgment in *Fidelity National Financial v. Friedman*, 225 Ariz. 307 (2010).   At common law, judgments generally became dormant within a year and unenforceable after twenty years.  *Id.* at 309 ¶ 6 (citing *Browne & Manzanares Co. v. Chavez*, 54 P. 234, 234  (N.M. Terr. 1898)).  Inattentive judgment creditors had two options:  first, to sue on the judgment in a new action to receive a new judgment, which might account for the debtor's recent payments.  *Id.* (quoting *Cont'l Nat. Bank & Tr. Co. of Salt Lake City v. John H. Seely & Sons Co.*, 77 P.2d 355, 358 (Utah 1938) ("[U]nder the early common law . . . it was necessary to sue on the judgment in a new action, affording the defendant an opportunity of proving that he had discharged it, if he had really done so.")).  Second, creditors could employ the writ of *scire facias*, which revived the original judgment.  *Id.* (quoting *Am. Ry. Exp. Co. v. F.S. Royster Guano Co.*, 126 S.E. 678, 679 (Va. 1925) ("The proceeding by scire facias is not a new suit . . .  but a continuation of the old suit.")).

**¶14**    Arizona's 1913 Civil Code eliminated *scire facias* in favor of a "simplified process under which a judgment was 'revived by affidavit.'" *Id.* ¶ 8 (quoting 1913 Civ.Code § 1353).  The affidavit, much like *scire facias*, "continued the effectiveness of the original judgment so that the judgment creditor could continue to execute upon it." *Id.*  But the 1913 Civil Code preserved the common-law alternative of renewing the judgment by an "action . . . brought thereon." *Id.* ¶ 9 (quoting 1913 Civ.Code § 1353).  Then-Justice Hurwitz noted that "[t]hese provisions from the 1913 Civil Code have been carried forward without material change into present law." *Id.* ¶ 10.

**¶15**    Section 12-1551(A), relevant here, now[4] provides:
> The party in whose favor a judgment is given, at any time within five years after entry of the judgment and within five years after any renewal of the judgment either by affidavit or by an action brought on it, may have a writ of execution or other process issued for its enforcement.

§ 12-1551(A).  That is, the statute imports both the common-law remedy of bringing an action on a judgment, and the modified common-law remedy of renewal by affidavit.  And in *Fidelity*, this Court held that an action on

---

[4] This quotation reflects the state of the law when Specialty filed suit in 2009. Section 12-1551(A)'s limitation period was extended to ten years in 2018.

the judgment under § 12-1551(A) reflects the narrow common-law "renewal" mechanism and does not allow for collateral "enforcement" efforts such as garnishment. *See Fidelity*, 225 Ariz. at 312 ¶ 24 (citing *In re Smith*, 209 Ariz. 343, 345 ¶ 13 (2004) (recognizing the difference between enforcing and renewing a judgment)).

¶16　　　That the statute cannot serve as a vehicle to pierce the corporate veil is evident from both its language and procedure. No occasion existed for Specialty to renew the judgment because the suit here was filed within five years of the judgment, and in fact plaintiff did not use the phrase "action on a judgment" until its Second Amended Complaint. Thus, this is not an action on the judgment because it does not seek to renew the judgment.

¶17　　　The statute alternatively allows renewal of the judgment by affidavit. An affidavit will never suffice to pierce the corporate veil, which, as noted, involves complex matters of proof. It is therefore clear that § 12-1551(A) was not designed or intended to create or support a standalone veil-piercing action.

¶18　　　Further, as the trial court observed, § 12-1551(B) refers to "execution or other process . . . issued on a judgment." The statute does not give rise to a new action. Thus, as the trial court stated, "while a plaintiff can assert a writ of process within five years after entry or renewal of judgment under § 12-1551, nothing in that statute permits a plaintiff to bring a new action that would otherwise be barred by the Statute of Limitations."

¶19　　　We have emphasized that the renewal process is a straightforward device that reliably notifies interested parties of the continuing viability of the judgment. *See Fidelity*, 225 Ariz. at 311 ¶ 19; *see also In re Smith*, 209 Ariz. 343, 345 (2004) ("[T]he filing of an affidavit of renewal is simply a ministerial action intended in part to alert interested parties to the existence of the judgment . . . [the affidavit] serves a notice function and does not seek to enforce a judgment."). Today we affirm the narrow understanding of § 12-1551(A) as stated in *Fidelity*, which respects common-law origins and aligns with the modern statute's plain meaning and statutory purpose. We are unpersuaded by out-of-state rulings to the contrary, which do not reflect our state's history and concept of an action on a judgment.

¶20 In particular, we disagree with the Southern District of New York's approach as stated in *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 608 F. Supp. 1261 (S.D.N.Y. 1985). *Passalacqua* analyzed a similar scenario, but the district court chose without explanation to apply New York's limitation period for actions on a judgment. *Id.* at 1264–65. The court merely stated that:

> Under the *alter ego* and instrumentality theories the corporation and those who have controlled the corporation are treated as but one entity . . . The action accrued against both the corporation and any *alter egos* when the judgment was entered.

*Id.* at 1264 (footnote omitted) (citation omitted).

¶21 Of course, we must interpret A.R.S. § 12-1551(A) in light of Arizona's common law, whereas *Passalacqua* applies New York's distinct legal framework, so the district court's ruling is distinguishable on those grounds. But we also find the court's limited reasoning internally inconsistent. On one hand, the court was unprepared to find on the merits that the defendant was an alter ego of the judgment creditor, noting several outstanding issues of fact. *Id.* at 1265. But when asked whether the action to enforce the money judgment was timely, the court assumed what it was otherwise unwilling to establish and held that because "the action accrued against both the corporation and any alter egos when the judgment was entered . . . [t]he action to enforce the money judgment [was] therefore timely." *Id.* at 1264.

¶22 Specialty similarly seeks to put the cart before the horse. No court has found that Maricopa Lakes is the alter ego of Meritage. We will not base a timeliness ruling on such a critical unproven assumption, especially given that Meritage was not a party to the original action that produced the judgment Specialty seeks to enforce, and Meritage has had no opportunity to defend against the underlying cause of action. We are mindful of the general rule that "[i]t is a violation of due process for a judgment to be binding on and enforceable against a litigant who was not a party or a privy, and therefore has never had an opportunity to be heard." *Associated Aviation Underwriters v. Wood*, 209 Ariz. 137, 180 ¶ 151 (App. 2004) (quoting *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327 (1979)).

¶23 The discourse above illustrates that Specialty's alter ego claim should not be viewed as a simple attempt to renew the judgment, but rather a new collection action outside the purview of § 12-1551(A). Put as simply as possible, Specialty seeks to hold Meritage liable for Maricopa Lakes' breach of contract. It follows that Specialty was bound by the six-year statute of limitations for breach of contract, the cause of action from which the alter ego claim derives.

¶24 A claim for breach of contract accrues when the plaintiff knew or should have known the facts giving rise to the claim. *Gust Rosenfeld v. Prudential Ins.*, 182 Ariz. 586, 588 (1995). The trial court heard evidence that G&K had known the necessary facts to bring a breach-of-contract claim as of late 2007 or early 2008 and found that Specialty's 2015 suit was "barred by the six-year Statute of Limitations." We find no reason to disturb the trial court's ruling and thus affirm that Specialty's alter ego claim is time-barred.

## CONCLUSION

¶25 We hold that the statute of limitations for alter ego actions is determined by reference to the cause of action from which the alter ego claim derives, and that, here, Specialty was bound by the six-year statute of limitations for breach of contract. We reverse the court of appeals' opinion and affirm the trial court's dismissal of the complaint and entry of judgment for Meritage Homes.

¶26 Both parties seek an award of attorney fees pursuant to A.R.S. § 12-341.01. Neither party's briefing was especially helpful to the Court. Specialty is not the successful party here, and we therefore deny its request. Although Meritage is the successful party, we exercise our discretion to deny its request.